U.S. DISTRICT COURT – N.D. OF N.Y.
FILED
Sep 23 - 2026
John M. Domurad, Clerk

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**ANAS SALEH,**
Plaintiff,

– against –

**TOWN OF CICERO, NEW YORK,**
Defendant.

Civil Action No. 5:26-cv-1816 (ECC/DJS)
(to be assigned by the Clerk)

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**
ADA Title II, 42 U.S.C. § 12132
Rehabilitation Act § 504, 29 U.S.C. § 794
42 U.S.C. § 12203(a), (b)

**NOTICE OF DISABILITY ACCOMMODATION.** Plaintiff is a qualified individual with a documented disability and is ADA-barred for telephone. Pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, Plaintiff requests written and electronic communication in lieu of telephone or fax, directed to asaleh01@hushmail.com.

## PRELIMINARY STATEMENT

1. Twice in nine months, officers of the Town of Cicero Police Department came to Plaintiff's home in encounters driven by his known psychiatric disability; twice they obtained from his wife a paper she understood to be a declination; and twice, Plaintiff alleges, they nonetheless recorded him as the offender in a domestic-incident report when no domestic incident had occurred. Between those two encounters, within hours of Plaintiff's notice that he would sue, the Town's Chief of Police asked a county official whether "formal charges" could be brought against him.

2. Plaintiff Anas Saleh, Esq., appearing on his own behalf, brings this action against the Town of Cicero, New York under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act, 29 U.S.C.

§ 794; and the anti-retaliation and anti-interference provisions of 42 U.S.C. § 12203(a) and (b).

3. This action does not seek money. Plaintiff demands nominal damages of **one dollar ($1.00)** and expressly disclaims punitive damages. He seeks the correction of false official records, an end to a practice, and the training that would prevent this from being done to the next person with a psychiatric disability in this Town.

4. Plaintiff sues no individual. The officers and officials identified below are named as actors, so that the record is complete, and not as parties. Plaintiff does not contend that any of them is a bad person. He contends that the Town did not train them.

## PARTIES

5. Plaintiff Anas Saleh, Esq. is a citizen of the United States and a resident of Onondaga County, New York. He is admitted to practice law in the State of New York (Registration No. 4982518). He is Palestinian-American. He has never been convicted of any crime.

6. Plaintiff is a Ḥanīf Christian: a pure monotheist in the way of Ibrahim who has accepted the Messiah, ʻĪsā — Jesus — peace be upon him. He worships the One alone and belongs to no denomination, sect, or congregation.

7. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102. He is diagnosed with bipolar I disorder, post-traumatic stress disorder, and attention-deficit/hyperactivity disorder, and is under the care of a treating clinician. On September 19, 2026, the Social Security Administration found him disabled under its rules as of December 6, 2025.

8. Plaintiff has no telephone service and is ADA-barred for telephone. Written and electronic communication is the only channel through which he can receive notice or take part in any public process.

9. Defendant Town of Cicero, New York (the "Town") is a municipal corporation organized under the laws of the State of New York, in Onondaga County, which establishes, funds, and operates the Town of Cicero Police Department. The Town is a public entity within 42 U.S.C. § 12131(1) and, upon information and belief, receives federal financial assistance within 29 U.S.C. § 794.

10. **Actors, not parties.** Saverio "Steve" Rotunno was at all relevant times the Town's Chief of Police and, upon information and belief, its final policymaker for law-enforcement functions. Sergeant Casey Placito, Officer Eric Flansburg, and Officer Cole Schanbacher were at all relevant times Town police officers. Robert M. Germain, Esq. was at all relevant times Town Attorney. Upon information and belief, Rob Santucci is the Supervisor of the Town of Cicero. None of them is sued in any capacity.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

11. This Court has federal-question jurisdiction under 28 U.S.C. § 1331.

12. Venue lies in this District under 28 U.S.C. § 1391(b)(1) and (2): the Town is located here, and the events giving rise to the claims occurred in the Town of Cicero, Onondaga County, within the Syracuse Division.

13. Declaratory relief is authorized by 28 U.S.C. §§ 2201–2202, and injunctive relief by Federal Rule of Civil Procedure 65.

14. No administrative exhaustion is required. Title II incorporates the remedies of Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a, through 42 U.S.C. § 12133, and requires no exhaustion before suit.

15. No notice of claim is required, because this Complaint pleads only federal causes of action. Plaintiff nonetheless served a Notice of Claim on the Town on July 1, 2026.

## FACTUAL ALLEGATIONS

### A. December 6, 2025 — the first removal

16. On December 6, 2025, Town police executed an order under Mental Hygiene Law § 9.45, issued on a second-hand report, and transported Plaintiff to the Comprehensive Psychiatric Emergency Program at St. Joseph's Hospital.

17. The contemporaneous St. Joseph's record documented "Drug use: Never" and a Columbia Suicide Severity Rating Scale score of 0/6. On December 7, 2025, Plaintiff was discharged on a finding of "no foreseeable threat of harm to self or others."

### B. December 19, 2025 — the first false report

18. On December 19, 2025, Plaintiff called 911 for assistance concerning his father. He was not the subject of any domestic-violence complaint, and no domestic incident occurred.

19. Sergeant Placito, Officer Flansburg, and Officer Schanbacher responded. Plaintiff's wife, M.Z., told the officers that Plaintiff "wouldn't hurt a fly" and that there were "no issues."

20. The officers pressed M.Z. to sign papers, telling her in substance: "If you do not sign this, we are taking him to jail." Upon information and belief, M.Z. understood every paper she signed to be a declination that would end the matter.

21. On December 22, 2025, Chief Rotunno wrote to Plaintiff that he had initiated an internal-affairs investigation and would review the officers' reports and body-worn camera footage, and that his initial review showed that the only documents signed or completed were an ambulance refusal form and the following:

> "A signed declination by [M.Z.] refusing to proceed with a criminal mischief charge"; "A signed New York State–mandated Victim's Rights Notice by [M.Z.]"; and "A New York State–mandated Domestic Incident Report completed by Officer Flansburg, after which the case was closed."

22. Thus the only person the Town treated as a complainant declined to proceed, and the case was closed — yet the Town recorded Plaintiff as the offender in Domestic Incident Report DR No. 25-615418, which, upon information and belief, was transmitted to the New York State Division of Criminal Justice Services, where it remains.

23. That day Plaintiff was confined in an ambulance, threatened with a forced injection, and transported to the Vera House domestic-violence shelter as the designated offender.

24. That evening Plaintiff and M.Z. memorialized the encounter in a sixteen-page written complaint of police misconduct addressed to the Chief of Police, digitally signed at 18:46:33 on December 19, 2025.

25. No criminal charge was filed. The report remains.

**C. December 25, 2025 — independent exoneration**

26. On December 25, 2025, Plaintiff presented to Upstate University Hospital, a separate institution, which recorded "Drug use: No," documented that Plaintiff denied suicidal and homicidal ideation, and found him safe for discharge.

**D. May 27, 2026 — the retaliation**

27. On May 27, 2026, within hours of Plaintiff's notice of suit, Chief Rotunno sent an email at approximately 10:54 a.m. to an Onondaga County official, copying Town counsel and the Town's liability insurer, asking: "Is there anything we can do legally for formal charges" against Plaintiff. The same email characterized Plaintiff's claims as "non-factual allegations," terminated the internal-affairs review before its

completion, and directed Plaintiff to cease contact. An attempted recall of the email followed at approximately 11:22 a.m.

28. A chief of police asking a county official whether charges can be brought against a person who has just asserted disability-discrimination claims — and closing the review of those very claims in the same message — is the conduct 42 U.S.C. § 12203 forbids. The interval between the protected activity and the adverse action is measured in hours.

**E. The Town's written notice of Plaintiff's disability and of his need for written communication**

29. On or about May 28, 2026, Plaintiff served on the Town Clerk, Chief Rotunno, and the Town Attorney a notice of motion in Supreme Court, Onondaga County, seeking disability accommodations — including written and electronic communication — supported by his affirmation and by his treating clinician's documentation of bipolar I disorder and post-traumatic stress disorder. Upon information and belief, each received it.

30. On June 10, 2026, Plaintiff wrote to the Town's Records Access Officer requesting records by email "as a reasonable accommodation under Title II of the ADA (42 U.S.C. 12131-12132) and Section 504," stating: "I am unable to use the telephone and have no fax access." The Town answered in writing on or about June 15, 2026.

31. From no later than June 2026, therefore, the Town had actual written knowledge of Plaintiff's disability and of his need for written communication, and had demonstrated that it could communicate with him in writing. Each encounter alleged here was, moreover, conducted under the Mental Hygiene Law — a statute that applies only because of psychiatric disability.

**F. September 4, 2026 — the same thing, again**

32. On or about September 4, 2026 — the day Plaintiff was taken to Upstate University Hospital — Town police officers came to Plaintiff's home.

33. The officers displayed no warrant. The only document described to Plaintiff was a "pick-up order." Upon information and belief, it was a Mental Hygiene Law removal document and was not a warrant issued by a judge.

34. Plaintiff told the officers, clearly and more than once, not to come onto his property, and he did not consent to their entry. He was standing on his own front lawn. Plaintiff's wife and neighbors were present.

35. Upon information and belief, the officers did again exactly what had been done on December 19, 2025: they had M.Z. sign a paper declining to proceed; they issued a domestic-violence notice; they prepared a second Domestic Incident Report designating Plaintiff the offender; and they opened a new DR case. No domestic incident occurred.

36. Notwithstanding Plaintiff's objection, an officer came onto the property and Plaintiff was arrested and taken from his home. Upon information and belief, the sequence of the arrest, the transport to Upstate University Hospital, and any arraignment is recorded in the Town's own reports, which Plaintiff has requested under the Freedom of Information Law. Plaintiff has never been given an accusatory instrument.

37. Plaintiff does not ask this Court to enjoin, intervene in, or pass on any pending state criminal proceeding. He pleads the events of September 4, 2026 because they repeat, nine months later and after written complaint, the practice alleged above — which shows a real and immediate threat that it will be repeated again, and supports the prospective relief sought.

### G. Failure to train

38. Upon information and belief, the Town failed to train its officers in (a) lawful handling of encounters with persons with psychiatric disabilities; (b) the requirements of Mental Hygiene Law Article 9; (c) accurate preparation of domestic-incident reports, including where the only complainant declines to proceed; and (d) effective communication with persons who cannot use a telephone. The need was obvious: the Town's officers exercise Mental Hygiene Law powers routinely. The repetition of the same sequence in September 2026, after the written complaint of December 2025 and the internal-affairs review the Chief closed in May 2026, shows that the Town neither trained nor corrected. The Town was deliberately indifferent, and that indifference was the moving force behind the violations alleged.

## COUNT ONE
## Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132

39. Plaintiff repeats each preceding paragraph.

40. Plaintiff is a qualified individual with a disability, and the Town is a public entity. By reason of his disability, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination in the Town's services, programs, and activities — including its law-enforcement response, its official records, and its complaint and internal-affairs process.

41. In encounters it undertook because of Plaintiff's disability, the Town failed to make reasonable modifications of its policies, practices, and procedures necessary to avoid discrimination, and instead recorded Plaintiff as a domestic-violence offender where the only complainant had declined to proceed.

42. The Town acted with deliberate indifference: it had actual knowledge of Plaintiff's disability and of the likelihood of harm, and it failed to act.

## COUNT TWO
## Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

43. Plaintiff repeats each preceding paragraph.

44. Upon information and belief, the Town receives federal financial assistance. Solely by reason of his disability, Plaintiff was excluded from participation in, denied the benefits of, and subjected to discrimination under programs and activities receiving such assistance.

## COUNT THREE
## Retaliation, 42 U.S.C. § 12203(a)

45. Plaintiff repeats each preceding paragraph.

46. **Protected activity.** Plaintiff opposed practices made unlawful by the ADA and made and pursued complaints of disability discrimination, including by his written complaint of December 19, 2025; his notice of suit in May 2026; his accommodation requests of May 28 and June 10, 2026; and his action in this Court, No. 5:26-cv-01235.

47. **Knowledge.** The Town knew of that activity; the May 27, 2026 email refers to Plaintiff's claims by name and character.

48. **Adverse action.** Through its final policymaker, the Town solicited criminal charges against Plaintiff, terminated the internal-affairs review before completion, and directed him to cease contact. Upon information and belief, the second Domestic Incident Report and the arrest of September 4, 2026 followed the Chief's written request for "formal charges" and occurred while Plaintiff's action against the Town was pending in this Court.

49. **Causation.** The first adverse action followed the protected activity by hours.

**COUNT FOUR**
**Interference, Coercion, and Intimidation, 42 U.S.C. § 12203(b)**

50. Plaintiff repeats each preceding paragraph.

51. The Town coerced, intimidated, threatened, and interfered with Plaintiff in the exercise and enjoyment of rights granted and protected by the ADA, including by soliciting criminal charges against him for asserting those rights and by terminating the review of his complaint.

52. The remedies for Counts Three and Four are those provided by 42 U.S.C. § 12133, pursuant to 42 U.S.C. § 12203(c).

**PRAYER FOR RELIEF**

53. WHEREFORE, Plaintiff respectfully requests that the Court:

(a) Declare that the Town violated Title II of the ADA, Section 504, and 42 U.S.C. § 12203;

(b) Order the correction or expungement of Domestic Incident Report DR No. 25-615418 and of any domestic incident report prepared on or about September 4, 2026 naming Plaintiff, and order the Town to notify every person, agency, and database to which either was disseminated, including the Division of Criminal Justice Services;

(c) Enjoin the Town to adopt, and to train its officers in, written policies governing encounters with persons with psychiatric disabilities, Mental Hygiene Law Article 9, accurate preparation of domestic-incident reports, and effective communication with persons who cannot use a telephone;

(d) Enjoin retaliation against Plaintiff for asserting rights under the ADA;

(e) Award nominal damages of one dollar ($1.00);

(f) Award costs and such fees as 42 U.S.C. § 12205 allows;

(g) Plaintiff expressly disclaims, and does not seek, punitive damages;

(h) Should the Court find any allegation insufficient, grant Plaintiff leave to amend; and

(i) Grant such other relief as is just.

## DEMAND FOR JURY TRIAL

54. Pursuant to the Seventh Amendment and Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## STATEMENT CONCERNING DISABILITY

55. Plaintiff prepared this pleading while experiencing active symptoms of post-traumatic stress disorder, using a drafting tool as a disability accommodation. Every allegation is true to his knowledge or, where so stated, upon information and belief. He intends to seek leave to amend, and consolidation with No. 5:26-cv-01235, when he is able.

## VERIFICATION

56. I, Anas Saleh, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint and that its factual allegations are true of my own knowledge, except those alleged upon information and belief, which I believe to be true. 28 U.S.C. § 1746. Executed on September 23, 2026, at Kyiv 1 (also known as Cicero, NY).

Dated: September 23, 2026
Kyiv 1 (also known as Cicero, NY)

Respectfully submitted,

*/s/ Anas Saleh, Esq.*
ANAS SALEH, ESQ.
Civil Rights Attorney
Member, New York State Bar (Reg. No. 4982518)
Pro Se Plaintiff / Petitioner
Settlor, Saleh Family Trust Niyyah

Servant of The One — Ḥayy Rabbi Ḥayy — Malik al-Mulk
Proudly Bipolar I — It Is a Divine Gift
Proudly Ḥanīf Christian — Proudly Palestinian-American
Proud New Yorker — NY, The Empire State

5963 Hebrides Trail, Kyiv 1 (also known as Cicero, NY) 13039
(315) 569-1343 — ADA-barred for telephone; calls will NOT be returned
asaleh01@gmail.com | asaleh01@hushmail.com (encrypted preferred)

UNDER GOD — UNITED STATES CONSTITUTION
UNDER GOD — NEW YORK STATE CONSTITUTION
E PLURIBUS UNUM — OUT OF MANY, ONE

PALESTINE FOREVER. FROM THE RIVER TO THE SEA, PALESTINE FOREVER.

SLAVA UKRAINI — СЛАВА УКРАЇНІ — GLORY TO UKRAINE
HEROYAM SLAVA — ГЕРОЯМ СЛАВА — GLORY TO THE HEROES

---

**AI-ASSISTANCE DISCLOSURE.** This document was prepared with the aid of a computer-assisted drafting tool (Claude, by Anthropic) used by Plaintiff as a **cognitive-disability accommodation**. Plaintiff composed, reviewed, and adopted every assertion herein and **takes sole responsibility for every factual statement and every legal contention.** No legal advice was rendered by the tool, and the tool is not counsel. Plaintiff signs and files by his own hand.